# In the United States Court of Federal Claims

No. 16-688C

Filed: January 24, 2017

|  |  |  |
|---|---|---|
| MICHAEL HORVATH, *et al.*, individually, and on behalf of the classes of federal Secret Service agents similarly situated to him, | ) ) ) ) ) | Federal Employees Pay Act (Title V), 5 U.S.C. §§ 5541, *et seq*.; 12(b)(1), Subject |
| Plaintiffs, | ) ) | Matter Jurisdiction; 12(b)(6), Failure to State a Claim. |
| v. | ) ) |  |
| THE UNITED STATES, | ) ) |  |
| Defendant. | ) |  |

*Nicholas M. Wieczorek*, Counsel of Record, Morris Polich & Purdy LLP, Las Vegas, NV, *David J. Vendler*, Counsel of Record, Morris Polich & Purdy LLP, Los Angeles, CA, for plaintiff.

*Sosun Bae*, Trial Attorney, *Claudia Burke*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, United States Department of Justice, Civil Division, Washington, DC, for defendant.

## **MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

## I.    INTRODUCTION

Plaintiff, Michael Horvath, a United States Secret Service ("USSS") Special Agent, brings this civilian pay action against the United States seeking back pay and declaratory and injunctive relief on behalf of himself and similarly situated USSS Special Agents, pursuant to the Federal Employees Pay Act ("Title V"), 5 U.S.C. §§ 5541, *et seq.*  Specifically, Mr. Horvath alleges that the government has not properly compensated him and other similarly situated special agents for certain hours worked in excess of 40 hours per week.  The government has moved to dismiss this action for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC").  The government has also moved to strike certain

documents that plaintiff filed in support of his back pay claims. For the reasons discussed below, the Court **GRANTS** the government's motion to dismiss and **DENIES** the government's motion to strike.

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

Plaintiff, Michael Horvath, is a special agent employed by the USSS. Compl. at ¶ 3. In the complaint, Mr. Horvath asserts four legal challenges to his compensation. First, he alleges that the USSS has not properly compensated him, and other similarly situated special agents, for certain regularly scheduled hours worked in excess of 40 hours per week, in violation of the 5 U.S.C. § 5542 (the "Overtime Pay Statute") and 5 U.S.C. § 5545a (the "LEAP" Statute). *Id.* at ¶1. In this regard, Mr. Horvath contends that he and other similarly situated special agents are entitled to receive premium overtime pay for such hours. *Id.* at ¶¶ 14-18. Second, plaintiff alleges that the USSS has not properly compensated him, and other similarly situated special agents, for regularly scheduled overtime hours that have been worked on days when a special agent also worked at least two hours of non-consecutive unscheduled overtime, in violation of the Overtime Pay Statute. *Id.* at ¶ 1.

In addition, Mr. Horvath alleges that the USSS has not properly compensated him, and other similarly situated special agents, for days worked that were not a part of the regular week-day schedule, so-called "flex" days, in violation of 5 U.S.C. § 6101. *Id.* at ¶¶ 1, 23. Finally, plaintiff alleges that the USSS has also failed to properly compensate him, and other similarly situated special agents, for the regularly scheduled work days taken off as a compensatory day off in lieu of premium overtime pay, in violation of 5 U.S.C. § 5543 and 5 C.F.R. § 550.114. *Id.* at ¶¶ 1, 27. As relief, Mr. Horvath seeks back pay for all hours of work for which he has not been properly compensated and certain declaratory and injunctive relief. *Id.* at 20-21.

---

[1] The facts in this Memorandum Opinion and Order are taken from plaintiff's complaint ("Compl. at"), the government's motion to dismiss ("Def. Mot. at") and plaintiff's opposition to the government's motion to dismiss ("Pl. Opp. at"). Unless otherwise noted, the facts recited herein are undisputed.

### 1.  Mr. Horvath's Compensation

The facts regarding Mr. Horvath's compensation are not in dispute.  Mr. Horvath has been employed as a special agent with the USSS since 2010.  Compl. at ¶ 7.  Currently, he is compensated at the GS-13 level, with an annual base salary of between $73,115 and $95,048.  *Id*. In addition, Mr. Horvath receives a 25% enhancement to his base salary, known as law enforcement availability pay or "LEAP pay," pursuant to the LEAP Statute.  *Id*.

Mr. Horvath's responsibilities as a special agent include ensuring the safety of current and former national leaders and their families, visiting heads of state and foreign embassies.  *Id*. at ¶ 5; *see also* 18 U.S.C. § 3056(a).  To this end, plaintiff's back pay claims in this case relate primarily to compensation for time that Mr. Horvath spent performing such protective missions. Compl. at ¶ 6.

Because he is a secret service agent, Mr. Horvath is considered to be a "criminal investigator" under the relevant federal statutes and regulations governing civilian pay.  *Id*. at 8; *see also* 5 CFR § 550.103.  It is undisputed that Mr. Horvath's back pay claims in this case are governed by the Federal Employees Pay Act, or Title V.  5 U.S.C. §§ 5541, *et seq*.; *see also* Compl. at ¶ 8; Def. Mot. at 2.

### 2.  The Overtime Pay Statute And Regulations

As background, the Overtime Pay Statute governs hourly overtime pay for certain federal employees, including criminal investigators like Mr. Horvath.  *See generally* 5 U.S.C. § 5542 (2015).  This statute provides, in relevant part, that:

> (a) For full-time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, . . . in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter, at the following rates:
>
> (2) For an employee whose basic pay is at a rate which exceeds the minimum rate of basic pay for GS–10 . . . the overtime hourly rate of pay is an amount equal to the greater of one and one-half times the hourly rate of the minimum of basic pay for GS–10 . . . or the hourly rate of basic pay of the employee, and all that amount is premium pay.

5 U.S.C. § 5542(a).  The Overtime Pay Statute also provides that a criminal investigator "shall be compensated for all other overtime under" the LEAP Statute:

1. (d) In applying subsection (a) of this section with respect to any criminal investigator who is paid availability pay under section 5545a—

   (1) such investigator shall be compensated under such subsection (a), at the rates there provided, for overtime work which is scheduled in advance of the administrative workweek—
       (A) in excess of 10 hours on a day during such investigator's basic 40 hour workweek; or
       (B) on a day outside such investigator's basic 40 hour workweek; and

   (2) such investigator shall be compensated for all other overtime work under section 5545a.

5 U.S.C. § 5542 (d).  And so, a criminal investigator that receives LEAP pay is compensated at the premium overtime rates set forth in the Overtime Pay Statute if the criminal investigator either:  (1) works at least 10 hours on a day that is part of the criminal investigator's 40-hour workweek; or (2) works on a day that is outside of the basic 40-hour workweek.  5 U.S.C. § 5542(d)(1).

The Overtime Pay Statute also provides special rules to compensate criminal investigators for regularly scheduled overtime that involves protective services.  Specifically, section 5542(e) of the Overtime Pay Statute provides that:

   (e) Notwithstanding subsection (d)(1) of this section, all hours of overtime work scheduled in advance of the administrative workweek shall be compensated under subsection (a) if that work involves [protective services] and if the investigator performs, on that same day, at least 2 hours of overtime work not scheduled in advance of the administrative workweek.

5 U.S.C. § 5542(e).  And so, a special agent who performs protective services will be compensated for all regularly scheduled overtime worked at the premium overtime rates under the Overtime Pay Statute on a day that the criminal investigator also worked at least two hours of unscheduled overtime.  *Id*.

4

The United States Office of Personnel Management ("OPM") has promulgated two regulations implementing this provision. These regulations require that the two hours of unscheduled overtime required under section 5542(e) of the Overtime Pay Statute must be consecutive. [2] 5 C.F.R. §§ 550.111, 550.182; *see also* Def. Mot. at 4; Compl. at ¶¶ 20-22.

### 3. The LEAP Statute

Congress enacted the Law Enforcement Availability Pay or "LEAP" Statute, 5 U.S.C. § 5545a, to account for the unpredictable schedules of criminal investigators, including USSS special agents. Def. Mot. at 3; Compl. at ¶¶ 8-9, 11-12. Under the LEAP Statute, criminal investigators may receive an annual enhancement to their basic pay. 5 U.S.C. § 5545a; Def. Mot. at 3; Compl. at ¶¶ 8-9, 11-12. And so, the purpose of LEAP Statute is "'to provide premium pay to criminal investigators to ensure [their] availability . . . for unscheduled duty in excess of a 40 hour work week based on the needs of the employing agency.'" 5 U.S.C. § 5545a(b).

The LEAP Statute provides that a criminal investigator shall be paid LEAP pay to ensure the availability of that investigator for "unscheduled duty." The statute further provides, in relevant part, that:

> Availability pay provided to a criminal investigator for such unscheduled duty shall be paid instead of premium pay provided by other provisions of this subchapter, except premium pay for regularly scheduled overtime work as provided under section [5 U.S.C. §] 5542, night duty, Sunday duty, or holiday duty.

5 U.S.C. § 5545a(c); *see also Doe v. United States*, 372 F.3d 1347, 1351-52 (Fed. Cir. 2004) ("The head of an agency also may . . . grant annual premium pay of up to twenty-five percent instead of overtime compensation when 'an employee [is] in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular,

---

[2] *See* 5 C.F.R. § 550.111(f)(1) ("[A]ll overtime work scheduled in advance of the administrative workweek on a day containing part of a criminal investigator's basic 40-hour workweek must be compensated under this section if . . . [t]he investigator performs on the same day at least 2 consecutive hours of overtime work that are not scheduled in advance of the administrative workweek and are compensated by availability pay."); 5 C.F.R. § 550.182(b)(2) ("[R]egularly scheduled overtime hours . . . are those overtime hours scheduled in advance of the investigator's administrative workweek, excluding . . . the first 2 hours of overtime work performing protective duties . . . on any day containing a part of the investigator's basic 40-hour workweek, unless the investigator performs 2 or more consecutive hours of unscheduled overtime work on that same day.").

unscheduled overtime duty . . . .'"").  The LEAP Statute also describes the criteria that must be met by a criminal investigator in order to be eligible for annual LEAP pay.  In this regard, the LEAP Statute provides that a criminal investigator shall receive availability pay if the average of the unscheduled duty hours that he or she works in excess of each work day, and the annual average of unscheduled duty hours that he or she is available to work on each regular day, is greater than two hours.  5 U.S.C. § 5545a(d).

### 4.  5 U.S.C. § 6101

Scheduling for federal employees who, like Mr. Horvath, are subject to Title V is generally addressed in section 6101 of that act.  5 USC § 6101, *et seq*.  This provision provides that the head of an executive agency shall establish a basic 40-hour administrative workweek for every full-time employee and requires that the hours worked within that workweek be performed during "a period of not more than 6 of any 7 consecutive days."  5 U.S.C. § 6101(2).  The statute further provides that, unless an executive agency head "determines that his agency would be seriously handicapped in carrying out its functions or that the costs would be substantially increased," the head of an executive agency must, among other things, assign tours of duty that are scheduled at least a week in advance and schedule the basic 40-hour workweek on five days Monday through Friday, when possible.  5 U.S.C. § 6101(3); *see also* 5 C.F.R. § 6101.111(a) ("The head of each agency, with respect to each full-time employee to whom this subpart applies, shall establish by a written agency policy statement . . . [a] basic workweek of 40 hours . . . ."); 5 C.F.R. § 610.121(b)(3) ("If it is determined that the head of an agency should have scheduled a period of work as part of that employee's regularly scheduled administrative workweek and failed to do so . . . the employee shall be entitled to the payment of premium pay for that period of work as regularly scheduled work . . . .").

### 5.  5 U.S.C. § 5543

Title 5, United States Code, section 5543 addresses compensatory time off in lieu of pay for irregular or occasional overtime.  *See* 5 U.S.C. § 5543; *see also Doe*, 372 F.3d at 1351 (Title V also "allows the head of an agency to 'grant [an] employee compensatory time off from his scheduled tour of duty instead of payment under section 5542.'").  This provision provides, in relevant part, that the head of an agency may grant an employee "compensatory time off from his scheduled tour of duty instead of [premium overtime pay] for an equal amount of time spent in

irregular or occasional overtime work . . ."  5 U.S.C. § 5543.  The OPM has promulgated a regulation implementing this compensatory time statute which further provides that, subject to certain exceptions, "an employee must use accrued compensatory time off . . . by the end of the 26th pay period after the pay period during which it was earned."  5 C.F.R. § 550.114.

### 6.  The USSS's 8-2-2 Policy

The USSS implements the aforementioned pay statutes and regulations under what plaintiff refers to as the "8-2-2 policy."  Compl. at ¶ 15; Def. Mot. at 3.  Under this policy, USSS special agents are compensated as follows for a 12-hour shift: (1) with base pay for the first eight hours worked on a regularly scheduled work day; (2) with LEAP pay for the next two hours of scheduled overtime; and (3) with scheduled overtime pay for any scheduled hours in excess of ten hours. [3]  Compl. at ¶ 15; Def. Mot. at 3-4; *see also* 5 U.S.C. § 5542(d).

### B.  Procedural Background

Plaintiff commenced this back pay action on June 10, 2016.  *See generally* Compl.  On August 11, 2016, the government filed a motion to dismiss, pursuant to RCFC 12(b)(1) and (6).  *See generally* Def. Mot.

On September 12, 2016, plaintiff filed a response in opposition to the government's motion to dismiss and on October 6, 2016, the government filed a reply in support of its motion to dismiss.  *See generally* Pl. Opp.; Def. Reply.  On December 2, 2016, plaintiff also filed a notice of supplemental authority in support of its opposition to the government's motion to dismiss.  *See generally* Pl. Notice.

On December 19, 2016, the government filed a motion to strike plaintiff's notice of supplemental authority.  *See generally* Def. Mot. to Strike.  Plaintiff has not filed a response to the government's motion to strike.  The Court addresses the pending motions below.

---

[3] *See* 5 C.F.R. § 550.103 ("Criminal investigator means a law enforcement officer as defined in 5 U.S.C. 5541(3) and this section . . . ."); 5 U.S.C. § 5541(3) ("'law enforcement officer' means an employee who . . . ").

### III.    LEGAL STANDARDS

#### A.  Rule 12(b)(1)

When deciding a motion to dismiss based upon a lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1), this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Plaintiff, nonetheless, bears the burden of establishing subject-matter jurisdiction, *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998), and he must do so by a preponderance of the evidence.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citations omitted).  And so, should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (Fed. Cl. 2006).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and the Court "possess[es] only that power authorized by Constitution and statute . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Under the Tucker Act, the Court has jurisdiction to adjudicate "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."  28 U.S.C. § 1491(a)(1).  The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).[4]  And so, to pursue a claim under the Tucker Act, a plaintiff must identify and plead a claim founded upon an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages.  *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself.") (citation

---

[4] Plaintiff also seeks to invoke the Court's jurisdiction under 28 U.S.C. § 1346, the "Little Tucker Act." The Little Tucker Act also requires that plaintiff identify a separate, substantive right to money damages. *See generally* 28 U.S.C. § 1346.

omitted); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages.").

### B.  Rule 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6), this Court must also assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor.  *See Erickson*, 551 U.S. at 94.  And so, to survive a motion to dismiss under RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint.  *Iqbal*, 556 U.S. at 678 (citation omitted).  On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant.  *Iqbal*, 556 U.S. at 663-64, 679 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### C.  Title V And Relevant OPM Regulations

Congress first enacted the Federal Employees Pay Act or Title V in 1945.  *See generally* Federal Employees Pay Act of 1945, Pub. L. No. 79-106, 59 Stat. 295 (June 30, 1945); *Doe v. United States*, 372 F.3d at 1351 (citing 5 U.S.C. § 5542(a)).  Prior to 1974, when the Fair Labor Standards Act became applicable to federal employees, federal employees received overtime compensation exclusively pursuant to Title V.  5 U.S.C. §§ 5541, *et seq.*; *Christofferson v. United States*, 64 Fed. Cl. 316, 319 (2005); *Aaron v. United States*, 56 Fed. Cl. 98, 99-100 (2003).  Title V provides, in part, that:

> For full-time, part-time and intermittent tours of duty, hours of work officially ordered or approved in excess of 40 hours in an administrative workweek, or . . . in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for . . . at [the rates provided in 5 U.S.C. § 5542(a)(1)-(5)].

5 U.S.C. § 5542(a).  As the United States Court of Appeals for the Federal Circuit has observed, "[t]his overtime requirement applies only to employees in Grade 15 or below, and an employee may not receive overtime if such payment would increase the employee's aggregate compensation in excess of the maximum allowable rate for Grade 15 employees." *Doe*, 372 F.3d at 1351 (citing 5 U.S.C. § 5547).

In addition, when Congress enacted Title V, it expressly delegated rulemaking authority to implement the act to the OPM's predecessor agency, the Civil Service Commission. *Doe*, 372 F. 3d at 1352.  Since the OPM replaced the Civil Service Commission in 1978, it has been responsible for promulgating Title V regulations. *Doe*, 372 F.3d at 1352; *see* Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (October 13, 1978); *see also* 5 U.S.C. § 5548; *Aaron*, 56 Fed. Cl. at 100.

The Federal Circuit has held that Title V's mandate authorizing the OPM to issue regulations to implement the act "allows OPM to 'fill gaps in the statutory scheme left by Congress, if it does so in a manner that is consistent with the policies reflected in the statutory program.'" *Doe*, 372 F.3d at 1357; *see also Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) ("'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly by Congress.'").  "Consequently, OPM has the authority to" promulgate overtime regulations to implement both Title V, as well as the Fair Labor Standards Act. *Abreu v. United States*, 948 F.2d 1229, 1233 (Fed. Cir. 1991) (per curiam). The resulting OPM regulations are entitled to deference by this Court, unless the regulations are found to be unreasonable. *Billings v. United States*, 322 F.3d 1328, 1333 (Fed. Cir. 2003) (citing *Chevron,* 467 U.S. at 848); *see also Jones v. Dep't of Transp.*, 295 F.3d 1298, 1307 (Fed. Cir. 2002) ("[A] long-standing interpretation given a statute by the agency charged with administering it should be deferred to unless it is unreasonable."); *Zumerling, et al. v. Devine*, 769 F.2d 745, 749 (Fed. Cir. 1985) (holding that "OPM's administration of the FLSA overtime provisions [was] both reasonable and consistent with the statute . . . .").  In addition, "the party contesting the regulation 'bears[] the burden of showing that the agency's approach is arbitrary or otherwise unreasonable.'" *Doe*, 372 F.3d. at 1359 (citing *Koyo Seiko Co. v. United States*, 258 F.3d 1340, 1347 (Fed. Cir. 2001)).

In this regard, "[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions." *Chevron*, 467 U.S. at 843; ("'The power of an administrative agency to administer a congressionally created program . . . necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.'"). First, the Court examines "'whether Congress has directly spoken to the precise question at issue'; if so, the Court 'must give effect to the unambiguously expressed intent of Congress.'" *Doe*, 372 F.3d. at 1358 (citing *Chevron*, 467 U.S. at 842-43). If the statute is ambiguous, the Court must proceed to step two and examine "whether the agency responsible for filling a gap in the statute has rendered an interpretation that is based on a permissible construction of the statute." *Id.* (citing *Koyo Seiko Co.,* 258 F.3d at 1346 (quoting *Chevron,* 467 U.S. at 843) (internal quotations omitted)).

## IV.   LEGAL ANALYSIS

The government has moved to dismiss this civilian back pay action for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(1) and (6). Specifically, the government argues that the Court does not possess subject-matter jurisdiction to entertain plaintiff's back pay claims, because none of the statutes upon which plaintiff relies confer jurisdiction upon this Court. Def. Mot at 9-11. Alternatively, the government argues that the Court should dismiss this matter because plaintiff fails to state a plausible claim for back pay. *Id.* at 11-18. The government has also moved to strike certain materials that plaintiff has submitted to the Court to support his back pay claims. *See generally* Def. Mot. to Strike. For the reasons discussed below, the Court **GRANTS** the government's motion to dismiss and **DENIES** the government's motion to strike.

### A.   The Court Possesses Jurisdiction To Consider Plaintiff's Claims

As an initial matter, to the extent that plaintiff brings his back pay claims pursuant to the LEAP Statute, 5 U.S.C. § 5542, or the Overtime Pay Statute, 5 U.S.C. § 5545a, the Court possesses jurisdiction to consider these claims. In the complaint, Mr. Horvath seeks compensation pay for wages allegedly owed to him for: (1) certain regularly scheduled hours in excess of 40 hours per week spent performing protective missions; (2) scheduled overtime hours worked on days where plaintiff worked at least 2 hours of non-consecutive unscheduled overtime; (3) overtime work that plaintiff alleges has been improperly paid as straight time,

because he was required to take a regularly scheduled work day as a compensatory day off; and (4) certain wages that plaintiff alleges have not been paid because he was required to utilize compensatory time off prior to the 26th pay period after such time off had been earned.  Compl. at ¶ 1.  Plaintiff invokes several statutes as the legal bases for his back pay claims, namely, 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1491(a)(1), 5 U.S.C. §§ 5542, 5543, 5545a, and 29 U.S.C. §§ 207(a)(1) and 216(b).  Compl. at ¶ 4.  But, he argues that his back pay claims primarily arise under the Overtime Pay Statute.  Pl. Opp. at 1.

Plaintiff has established that the Court possesses jurisdiction to consider his claims brought pursuant to the Overtime Pay Statute and the LEAP Statute.  It is well-settled that, to pursue a claim under the Tucker Act, plaintiff must identify and plead a claim founded upon an express or implied contract with the United States, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages.  *See Todd*, 386 F.3d at 1093-94; *Fisher v. United States*, 402 F.3d at 1172; *Testan*, 424 U.S. at 398-400.  This Court has held that the Overtime Pay Statute, 5 U.S.C. § 5542, and the LEAP Statute, 5 U.S.C. § 5545a, are such money-mandating sources of law.  *Doe v. United States*, 47 Fed. Cl. 594, 595 (Fed. Cl. 2000) (holding that "[s]ection 5542 is a money mandating statute."); *Vanderpool v. United States*, 84 Fed. Cl. 66, 77-78 (2008) (The Law Enforcement Availability Pay Act of 1994 "is a money-mandating statute . . . ").  And so, to the extent that plaintiff's back pay claims here arise under the Overtime Pay Statute or the LEAP Statute, plaintiff has established that the Court possesses jurisdiction to consider these claims.[5]

## B.  Plaintiff Fails To State Plausible Back Pay Claims

While the Court may consider plaintiff's back pay claims arising under the Overtime Pay Statute and the LEAP Statute, plaintiff, nonetheless, fails to state plausible claims for back pay in the complaint.  As discussed above, plaintiff asserts four challenges to his compensation: (1) that

---

[5] It is without dispute that plaintiff is not subject to the Fair Labor Standards Act and so, he may not rely upon 29 U.S.C. §§ 207(a)(1) and 216(b) to establish jurisdiction.  Compl. at ¶ 8; Def. Mot at 2, 6, 9.  In addition, the Court does not construe 5 U.S.C. § 5543 to be money-mandating.  Plaintiff also appears to rely upon 5 U.S.C. § 6101, which the Court also does not construe to be money-mandating.  Compl. at ¶¶ 23-26; Pl. Opp. at 14-18.  And so, as discussed further below, the Court does not possess jurisdiction to consider plaintiff's back pay claims to the extent that the claims are based upon either of these two statutes.

the USSS has not properly compensated him for regularly scheduled overtime hours worked on days when he worked at least two hours of non-consecutive unscheduled overtime; (2) that the USSS has not properly compensated him for certain regularly scheduled hours worked in excess of 40-hours per week; (3) that the USSS has not properly compensated him for days worked as "flex" days; and (4) that the USSS also failed to properly compensate him for compensatory time off received in lieu of overtime pay. *See generally* Compl.  But, as the government demonstrates in its motion to dismiss, a plain reading of Title V and its implementing OPM regulations makes clear that the USSS has properly compensated plaintiff.  And so, for the reasons discussed below, the Court must dismiss this case.  RCFC 12(b)(6).

### 1. Plaintiff Has Not Stated A Plausible Claim For Back Pay Under Section 5542

First, plaintiff fails to state a plausible claim that he is entitled to additional compensation for unscheduled overtime, because the OPM regulations that require plaintiff to work two hours of consecutive overtime hours in order to be eligible for such compensation appropriately interpret the Overtime Pay Statute.  The Overtime Pay Statute provides specific rules for the payment of regularly scheduled overtime for work that involves protective services:

> (e) Notwithstanding subsection (d)(1) of this section, all hours of overtime work scheduled in advance of the administrative workweek shall be compensated under subsection (a) if that work involves [protective services], *and if the investigator performs, on that same day, at least 2 hours of overtime work not scheduled in advance of the administrative workweek.*

5 U.S.C. § 5542(e) (emphasis added).  And so, the Overtime Pay Statute requires that plaintiff be compensated for all regularly scheduled overtime with premium overtime pay on a day when he also works at least two hours of unscheduled overtime.  *Id;* Compl. at ¶ 21; Def. Mot. at 4.  The OPM has promulgated two regulations to implement this requirement, which require that the two hours of unscheduled overtime called for under the Overtime Pay Statute be consecutive.  *See* 5 C.F.R. § 550.111(f)(1) ("[A]ll overtime work scheduled in advance of the administrative workweek on a day containing part of a criminal investigator's basic 40-hour workweek must be compensated under this section if . . . [t]he investigator performs on the same day at least 2 consecutive hours of overtime work that are not scheduled in advance of the administrative

workweek and are compensated by availability pay."); 5 C.F.R. § 550.182(b)(2) ("[R]egularly scheduled overtime hours . . .  are those overtime hours scheduled in advance of the investigator's administrative workweek, excluding . . . the first 2 hours of overtime work performing protective duties . . . on any day containing part of the investigator's basic 40-hour workweek, unless the investigator performs 2 or more consecutive hours of unscheduled overtime work on that same day.").

Contrary to plaintiff's contention in this matter, these regulations are consistent with the Overtime Pay Statute and Congressional intent.  Indeed, a plain reading of the Overtime Pay Statute demonstrates that the OPM's regulations governing overtime pay appropriately implement this statute, because the Overtime Pay Statute is silent on how the 2 hours of overtime work performing protective duties should be calculated.

In this regard, the Overtime Pay Statute expressly requires that a USSS special agent work two hours of unscheduled overtime before becoming eligible for premium overtime pay.  5 U.S.C. § 5542(e).  But, the statute is silent on how those two hours should be calculated.  *Id*. As the Federal Circuit has held, the Federal Employees Pay Act "allows OPM to fill such gaps in the statutory scheme left by Congress, if it does so in a manner that is consistent with the policies reflected in the statutory program."  *Doe*, 372 F.3d at 1357 (quoting *Contreras v. United States*, 215 F.3d 1267, 1274 (Fed. Cir. 2000); *see also Chevron,* 467 U.S. at 843 ("'The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly by Congress.'") (citations omitted).  And so, the OPM has promulgated regulations to interpret this requirement, because the Overtime Pay Statute does not state how to calculate the requisite 2 hours of overtime work performing protective duties,.

These regulations provide that the requisite two hours be consecutive.  *See* 5 C.F.R. §§ 550.111, 550.182.  Such a requirement is consistent with the plain language of the statute.  And so, the regulations appropriately fill a gap that Congress left in the Overtime Pay Statute.  *Id*.

It is also important to note that the fact that the Overtime Pay Statute would also permit the OPM to calculate the two hours of overtime required under the statute in a different manner does not change the Court's determination that the OPM's regulations are reasonable.  Compl. at

14

¶¶ 19-22; Pl. Opp. at 9-14; *see also AFL-CIO v. OPM*, 821 F.2d 761, 765 (D.C. Cir. 1987). Rather, the question presented here is whether, given the existing regulations, the OPM has rendered an interpretation of the Overtime Pay Statute that is based upon a permissible construction of the statute. *See Doe*, 372 F.3d. at 1358 (quoting *Koyo Seiko Co.*, 258 F.3d at 1346 ("If, however, the statute is ambiguous, we proceed to *Chevron* step two: 'whether the agency responsible for filling a gap in the statute has rendered an interpretation that "is based on a permissible construction of the statute.""'"). And so, plaintiff's challenge to these regulations is without merit.

Because it is undisputed that the USSS has compensated plaintiff in accordance with the requirements of the Overtime Pay Statute and the OPM's overtime pay regulations, plaintiff has not demonstrated that he is entitled to any additional compensation under the Overtime Pay Statute. And so, the Court must dismiss this back pay claim. RCFC 12(b)(6); *Doe*, 372 F.3d. at 1359 (citing *Koyo Seiko Co.*, 258 F.3d at 1347 ("the party contesting the regulation 'bears[] the burden of showing that the agency's approach is arbitrary or otherwise unreasonable.'")

### 2.    The USSS Properly Compensated Plaintiff Under The 8-2-2 Policy

Plaintiff also fails to state a plausible claim that the USSS's has not properly compensated him under the agency's 8-2-2 policy and that this policy conflicts with the LEAP Statute and its implementing regulations. Pl. Opp. at 21-28.

In this regard, it is undisputed that, under the 8-2-2 policy, plaintiff is compensated for a 12-hour shift with regular pay for the first eight hours of work performed; LEAP pay for the next two hours of work performed; and premium overtime pay for the remaining two hours of work performed. Compl. at ¶ 15; Def. Mot. at 3-4. Plaintiff disputes, however, that the USSS may compensate him with LEAP pay for hours nine and ten of such a 12-hour shift. Compl. at ¶¶ 16-18. Plaintiff's contention is belied, however, by the plain language of the Overtime Pay Statute and the LEAP Statute.

As discussed above, the Overtime Pay Statute explicitly requires that plaintiff must work at least 10 hours before he may be compensated at the premium overtime rates under that statute on a day that is part of his basic 40-hour workweek. 5 U.S.C. § 5542(d). The Overtime Pay Statute further requires that plaintiff "shall be compensated for all other overtime under" the

LEAP Statute.[6]  5 U.S.C. § 5542(d)(2).  Given this, the plain language of the Overtime Pay Statute requires that plaintiff work the first 10 hours of a 12-hour shift, before becoming eligible to receive premium overtime.

The Overtime Pay Statute also makes clear that any overtime hours that have not been compensated for under that statute must be compensated as LEAP pay under the LEAP Statute. 5 U.S.C. § 5542(d)(2).  Again, the Overtime Pay Statute states that criminal investigators like plaintiff "shall be compensated for all other overtime under" the LEAP Statute.  5 U.S.C. § 5542(d)(2).  And so, this statute requires that the USSS compensate plaintiff for hours nine and ten of a regularly scheduled 12-hour shift with LEAP pay.  *See* 5 U.S.C. §§ 5542, 5545a.

Plaintiff's contention that the LEAP Statute and relevant OPM regulations "can also be fairly read to support the interpretation that the LEAP Statute was never intended to be applied" to these overtime hours is also misguided.  Pl. Opp. at 26.  While it is generally correct that Congress intended for the LEAP Statute to ensure the availability of criminal investigators for unscheduled duty in excess of a 40-hour work week, Congress has also expressed its intent that such employees must work at least 10 hours before becoming eligible for premium overtime pay. As discussed above, Congress specifically required that LEAP pay be used to compensate for all overtime hours that fall short of the ten-hour threshold.  5 U.S.C. §5542(d).[7]  And so, plaintiff

---

[6] The LEAP pay statute, provides, in relevant part, that a criminal investigator shall be paid availability pay to ensure the availability of that investigator for "unscheduled duty."  5 U.S.C. § 5545a(b) further provides, in relevant part, that:

> Availability pay provided to a criminal investigator for such unscheduled duty shall be paid instead of premium pay provided by other provisions of this subchapter, except premium pay for regularly scheduled overtime work as provided under section [5 U.S.C. §] 5542, night duty, Sunday duty, or holiday duty.

5 U.S.C. § 5545a(b).

[7] Indeed, as the government observes in its reply brief, the legislative history for the LEAP Statute demonstrates that Congress included the 10-hour requirement for premium overtime pay as part of the legislation that also created the LEAP Statute.  Def. Reply at 8-10; *see* Treasury, Postal Serv. and Gen. Gov't. Appropriations Act, Pub. L. No. 103-329, § 633, 108 Stat. 2382, (Sept. 30, 1994); *see also Bradley v. United States*, 42 Fed. Cl. 333, 337 (1998)("[E]ach criminal investigators [sic] receiving availability pay may be required to work two extra hours during each regular work-day (up to ten extra hours a week) without additional compensation.  Congress intended this result in partial exchange for the criminal investigator receiving a guaranteed 2% pay increase.").

fails to state a plausible claim for back pay, because plaintiff acknowledges that the USSS has compensated him with LEAP pay for hours nine and ten of his 12-hour shifts under the agency's 8-2-2 policy.  RCFC 12(b)(6).

### 3.      Plaintiff Fails To Allege A Plausible "Flex-Day" Claim

Plaintiff's third back pay claim—that the USSS has not properly compensated him for days worked as "flex" days—is equally flawed.  In the complaint, plaintiff alleges that the USSS has forced him to "flex," or take off, certain days during the regular workweek so that he would be available to work on the weekend.  Compl. at ¶ 23.  Plaintiff further alleges that this practice has deprived him of premium overtime compensation that he otherwise would have earned for work performed on the weekend.  *Id*.  Plaintiff's claim is without merit for two reasons.

First, plaintiff has not met his burden to show that the Court possesses jurisdiction to consider this back pay claim.  As discussed above, the Court may consider plaintiff's back pay claims to the extent that these claims arise under the Overtime Pay Statute and/or the LEAP Statute.  But, the particular claim at issue here appears to arise under the portion of Title V that addresses scheduling matters—5 U.S.C. § 6101.  This Court has held that section 6101 is not money-mandating.  *See generally Uraga v. United States*, 4 Ct. Cl. 106, 108-09 (1983) (finding the statute at issue "did not create a substantive right mandating payment of money by the government" resulting in the dismissal of the case).  And so, to the extent that plaintiff is alleging a violation of 5 U.S.C. § 6101 here, the Court does not possess subject matter jurisdiction to consider this claim.  RCFC 12(b)(1).

Second, even if plaintiff could establish jurisdiction under the Tucker Act, he has not stated a plausible claim for back pay with respect to the USSS's "flex-day" policy.  In fact, plaintiff points to no provision in Title V, or elsewhere, that would prohibit the USSS from requiring him to "flex" certain days during the regular workweek.  Compl. at ¶ 23-26; Pl. Opp. at 14-18.  In particular, section 6101 does not prohibit the USSS from requiring plaintiff to flex days during the workweek and this statute also affords the USSS discretion to change plaintiff's work schedule.  5 U.S.C. § 6101(3) (requiring that an agency head schedule in advance the basic 40-hour work week on Monday through Friday "when possible.").  Compl. at ¶ 23-26; Pl. Opp. at 14-18.  Given this, plaintiff has simply failed to allege a plausible back pay claim related to the USSS's "flex-day" policy.  RCFC 12(b)(6).

**4.     Plaintiff Has Not Alleged A Plausible
Back Pay Claim For Compensatory Time Off**

Plaintiff's final back pay claim−that he has not been properly compensated for certain

compensatory time off −is similarly flawed.  Plaintiff alleges that USSS's policy to require

special agents to "use or lose" compensatory time off within the same pay period that the time

off has been earned violates Title V and the OPM's related regulation set forth in 5 C.F.R. §

550.114.  Compl. at ¶¶ 1, 27.  But again, plaintiff has not established that the Court possesses

jurisdiction to consider this claim.  Section 5543, upon which plaintiff relies to bring this claim,

is not money-mandating because this provision cannot be rationally read to provide a promise of

compensation. [8]  *See Doe*, 463 F.3d at 1324 ("A statute is not money-mandating when it gives

the government complete discretion over the decision whether or not to pay an individual or

group.  There is a presumption that the use of the word 'may' in a statute creates discretion.'")

(citations omitted).  The plain language of section 5543 demonstrates that this provision affords

discretion to the government to determine whether to grant compensatory time off in lieu of

overtime compensation.  5 U.S.C. § 5543.  Given the discretionary nature of the statute, section

5543 cannot form the jurisdictional basis for plaintiff's back pay claim.  *Doe*, 463 F.3d at 1324.

Plaintiff also fails to state a plausible claim for back pay under section 5543.  As

demonstrated above, this statute provides no authority whatsoever for the USSS to compensate

plaintiff for compensatory time off.  5 U.S.C. § 5543.  In fact, plaintiff has not identified *any*

source of law that would require the USSS to compensate him for compensatory time off under

---

[8] 5 U.S.C. § 5543 provides, in relevant part that:

(a) The head of an agency *may*—

(1) on request of an employee, grant the employee compensatory time off
from his scheduled tour of duty instead of payment under section 5542 or section
7 of the Fair Labor Standards Act of 1938 for an equal amount of time spent in
irregular or occasional overtime work; and . . .

(b) . . . An agency head may not require an employee to be compensated for
overtime work with an equivalent amount of compensatory time-off from the
employee's tour of duty.

5 U.S.C. § 5543 (emphasis added). The OPM has also promulgated a regulation to implement this statute
that states, in pertinent part, that, subject to certain exceptions, "an employee must use accrued
compensatory time off . . .  by the end of the 26th pay period after the pay period during which it was
earned.  *See* 5 C.F.R. § 550.114.

the circumstances alleged in the complaint.  Compl. at ¶ 27; Pl. Opp. at 18-21.  And so, the Court must dismiss this back pay claim for failure to state a claim upon which the Court may grant relief.  RCFC 12(b)(1), (6).

### C.  The Court Denies The Government's Motion to Strike

As a final matter, the Court denies the government's motion to strike certain documents that plaintiff filed to support his claims.  *See generally* Def. Mot. to Strike.  Plaintiff's filing consists of the congressional testimony of Patrick P. O'Carroll, the Executive Director of the Federal Law Enforcement Officers Association, as well as a December 9, 2015, Congressional Report entitled, "United States Secret Service: An Agency In Crisis."  *See generally* Pl. Notice.

The Federal Circuit has held that, within the context of deciding a 12(b)(6) motion, the Court's primary focus is the complaint.  *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015), *petition for cert. filed*, 84 U.S.L.W. 3429 (U.S. Jan. 19, 2016) (No. 15-944) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2004)); *see also Sebastian v. United States*, 185 F.3d 1368, 1374 (Fed. Cir. 1999).  But, the Court is not limited to the four corners of the complaint.  *Id*.  And so, the Court may also consider "'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record.'"  *Dimare Fresh, Inc.*, 808 F.3d at 1306 (quoting Wright & Miller, *supra*, § 1357 (brackets existing)).  Federal Rule of Evidence 201 also permits the Court to take judicial notice of adjudicative facts that are "not subject to reasonable dispute," because the facts "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.

A review of the documents submitted by plaintiff shows that these documents pertain to undisputed factual matters of public record that the Court may appropriately consider.  In this regard, the congressional testimony and the report filed by plaintiff are matters of public record and these documents are widely available and accessible to the public.  *See* O*versight of the Secret Service: Hearing Before the H. Comm. On Oversight and Gov't Reform*, 114th Cong. (2016) (statement of Patrick P. O'Carroll, Executive Director, Federal Law Enforcement Officers Association), https://oversight.house.gov/wp-content/uploads/2016/11/OCarroll-FLEOA-Statement-11-15-USSS-1.pdf (last visited Jan. 10, 2017); *United States Secret Service: An Agency in Crisis*, H.R. REP., 114th Congress, 2nd Sess. (2015), https://oversight.house.gov/wp-

content/uploads/2015/12/Oversight-USSS-Report.pdf (last visited Jan. 10, 2017).  The Court

may properly consider such documents under the standard articulated by the Federal Circuit in

*Dimare.  See Dimare Fresh, Inc.*, 808 F.3d at 1306.  And so, the Court denies the government's

motion to strike these documents.

**V.       CONCLUSION**

In sum, when read in the light most favorable to plaintiff, the complaint fails to state a

plausible claim for back pay under the Federal Employees Pay Act.  The facts in this matter also

show that the government has properly compensated plaintiff for all overtime under the

Overtime Pay Statute and the LEAP Statute and their implementing regulations.  In addition, the

Court may appropriately consider the public documents that plaintiff has filed to support his back

pay claims.

And so, for the foregoing reasons, the Court:

1. **GRANTS** the government's motion to dismiss; and

2. **DENIES** the government's motion to strike.

The Clerk shall enter judgment accordingly.

The parties shall bear their own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge