# In the United States Court of Federal Claims

No. 16-688C
Filed: March 25, 2020
NOT FOR PUBLICATION

| | |
|---|---|
| **MICHAEL HORVATH, individually, and on behalf of the classes of federal Secret Service agents and federal Diplomatic Security Service agents similarly situated to him,**<br><br>   *Plaintiff*,<br><br>v.<br><br>**UNITED STATES,**<br><br>   *Defendant*. | Keywords: Civilian Pay, Class Action, Summary Judgment, Amended Complaint |

*Nicholas Michael Wieczorek*, Clark Hill, PLC, Las Vegas, Nevada, for the plaintiff.

*Galina I. Fomenkova*, National Courts Branch, Civil Division, U.S. Department of Justice, Washington, D.C., with whom were *Jane M. Brittan*, Office of the Chief Counsel, U.S. Secret Service, and *Rebecca C. Wulffen*, Office of Employment Law, Office of the Legal Adviser, U.S. Department of State, of counsel, for the defendant.

## MEMORANDUM AND ORDER

***HERTLING*, Judge**

  U.S. Secret Service Special Agent Michael Horvath alleges that the United States, acting through the Secret Service and the U.S. Diplomatic Security Service ("the Services"), denied him and other agents pay for certain overtime hours. Mr. Horvath, on behalf of himself and other similarly situated special agents ("the Special Agents"), sued for back pay on four grounds. Another judge of this court dismissed the case on all four grounds, 130 Fed. Cl. 273, 286 (2017), but the Federal Circuit reversed the dismissal on one of the four grounds, 896 F.3d 1317, 1322 (Fed. Cir. 2018).

  The Services regularly schedule special agents to work 10- and 12-hour shifts when protecting officials. In a 12-hour shift, agents are paid for hours 1 through 8 with their base salary, for hours 9 and 10 with a fixed amount of "LEAP" premium pay added to their salary, and for hours 11 and 12 with hourly pay at overtime rates. 896 F.3d at 1318-19. *Unscheduled* overtime (*e.g.*, having to start a shift early or stay late) is not compensated on an hourly basis, but is considered to be part of LEAP pay. Under 5 U.S.C. § 5542(e), however, working two hours of

*unscheduled* overtime in a day triggers hourly overtime pay for that day's first two hours of *scheduled* overtime, hours 9 and 10 of the special agent's shift (hereinafter "§ 5542(e) pay").

The Federal Circuit's decision invalidated two Office of Personnel Management ("OPM") regulations. The OPM regulations largely mirrored § 5542(e)'s statutory language but added the word "consecutive" in their description of the hours of unscheduled overtime work required to trigger § 5542(e) pay. *Compare* 5 C.F.R. §§ 550.111(f)(2)(ii), 550.182(b)(2) *with* 5 U.S.C. § 5542(e). Finding § 5542(e) unambiguous under Step 1 of the *Chevron* analysis, *see Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), the Federal Circuit struck down the regulations and remanded the case to this court to consider class certification. 896 F.3d at 1322. The remanded case was then transferred to this judge.

Mr. Horvath has amended his complaint (ECF 20) and requests that the Court certify him as representative of a class of similarly situated special agents (ECF 42).[1] The Services move for summary judgment (ECF 44) because, they assert, their review of their time records after limited discovery has revealed that Mr. Horvath has already received "all of the overtime pay to which he is entitled" under the Federal Circuit's interpretation of 5 U.S.C. 5542(e). (ECF 44 at 1.) The Services also oppose Mr. Horvath's motion for class certification, arguing that the proposed class lacks the common questions of law or fact that RCFC 23 requires. (*Id.*)

The Court denies the defendant's motion for summary judgment and stays the plaintiff's motion for class certification.

## I.  LEGAL STANDARD

A grant of summary judgment is appropriate if the pleadings, affidavits, and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A material fact is one "that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists when the finder of fact may reasonably resolve the dispute in favor of either party. *Id.* at 250.

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "'[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). To establish "that a fact cannot be or is genuinely disputed," a party must "cite[ ] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A). If the record taken as a whole "could not lead a rational

---

[1] *See* Rule 23 of the Rules of the Court of Federal Claims ("RCFC") Rule 23 (providing the procedure and standards for class certification).

2

trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and a grant of summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).

## II.     ANALYSIS

The substantive cause of action in Mr. Horvath's amended complaint alleges that the Services have "wrongfully" failed to pay him "for wages earned while performing certain duties, including protective services . . . and while performing at least two hours of overtime work not scheduled in advance of the administrative workweek." (ECF 21 ¶¶ 38-40.) The amended complaint concludes that, as a result, Mr. Horvath has been "damaged in the amount of the wages [he] should have received had the U.S. not implemented its wrongful pay policies." The Court understands this specification of work done "while performing at least two hours of [unscheduled] overtime" to limit Mr. Horvath's remaining claim on remand to § 5542(e) pay.

### A.     The Services' Review of Mr. Horvath's Records

The Services argue that Mr. Horvath cannot prove a material fact—that the invalidated OPM "consecutive"-hours regulations denied Mr. Horvath any § 5542(e) pay in the six years before he filed suit up until the Services changed their pay policy in response to the Federal Circuit's decision. The Services support their argument with what they characterize as a comprehensive and systematic review of the records of Mr. Horvath's shift schedules and reported hours.

The Services' review concluded that Mr. Horvath has "undisputedly" received all of the overtime pay to which he is entitled. (ECF 44 at 9.) The Services assert that the OPM regulations, when they were applied to special agents, required a special agent's pay-triggering two hours of unscheduled overtime to be consecutive to one another. (*See* ECF 44 at 6 n.1) Based on that assertion, the Services reviewed Mr. Horvath's reported hours of unscheduled overtime to identify days in which he reported two such hours that were not consecutive to one another, what it calls a "1-1 hour split." (*Id.* at 6.) It then cross-referenced the 1:1-split days with Mr. Horvath's weekly schedules to identify days when Mr. Horvath's scheduled shifts included ninth and tenth (*scheduled* overtime) hours between a 1-1 hours split. (*Id.* at 6 & n.1.) The Services' review found only one day for which the OPM regulation would have denied Mr. Horvath § 5542(e) pay on account of a 1:1 split in his unscheduled overtime. The Services dismissed that day as a basis for Mr. Horvath's claim because his timecard showed that he reported overtime hours for hours 8 and 9 of his scheduled shift anyway.[2] (*Id.* at 7.) Thus, the Services conclude, Mr. Horvath would be unable to prove entitlement to any additional pay if his claim is allowed to proceed to trial. Neither in the Services' explanation of their review criteria

---

[2] Mr. Horvath explains that, on that day, he was working on the presidential protection detail. (ECF 54 at 7.) As his original complaint explained (ECF 1 ¶ 17), different time-reporting rules apply to special agents' hours worked on the presidential protection detail. (ECF 54 at 7.)

nor in the restatement of their conclusion within their argument do the Services explain why the OPM regulations were the only reason Mr. Horvath might have been denied § 5542(e) pay.

Mr. Horvath responds that the Services' 8-2-2 policy limited the hours agents were authorized to report or required them to modify their time reports accordingly. He supports this rebuttal with deposition testimony. (ECF 45 at 8-9.)

In addition, Mr. Horvath argues that the Services' 8-2-2 policy—more broadly—denied him the § 5542(e) pay that he claims. Mr. Horvath supports his argument with documented examples of days that he worked enough unscheduled overtime hours to receive overtime pay for hours 9 and 10 of his scheduled shift but was asked to reduce the number of his reported overtime hours by two hours to conform to the 8-2-2 policy. (ECF 45 at 9-10 (citing Exhibit 3.) Remarks in the adjusted time reports to which Mr. Horvath cites identify the 8-2-2 policy as the reason for the adjustment. (ECF 45 at ECF-numbered page 46.)

The Services dismiss six of Mr. Horvath's example days (January 29 and September 22-26, 2014) as immaterial because they do not reflect a 1:1 split of unscheduled overtime hours and do not, therefore, implicate the OPM regulations that the Federal Circuit invalidated.[3] (ECF 46 at 9.) The Services conclude, "whatever overtime pay [the plaintiff] was entitled to for that week [in September 2014], under section 5542(e) is not affected by the validity of the OPM regulation, and therefore not relevant to Mr. Horvath's sole remaining claim in this case." (ECF 46 at 9.)

### B. Genuine Issues of Material Fact

By requiring Mr. Horvath's examples to implicate the OPM regulations, the Services' affirmative argument for summary judgment and their rebuttal of Mr. Horvath's examples rely on a narrow definition of which facts are material to Mr. Horvath's claim. The Services assume that any underpayment Mr. Horvath would prove at trial must be on account of the invalidated OPM regulations to be a "material" fact—one that if proven at trial would allow the Court to decide the case in his favor. Mr. Horvath, on the other hand, effectively demonstrates that he

---

[3] Some of Mr. Horvath's examples show two hours of unscheduled overtime that were consecutive to one another, but not consecutive to Mr. Horvath's scheduled shift. Neither the Federal Circuit's decision nor this court's earlier decision found whether, when applied by the Services, the OPM regulation required that the two overtime hours be consecutive with each other, consecutive with a special agent's scheduled shift, or both. This question of how the OPM regulations' "consecutive"-hours requirement was applied to special agents, in practice, is different from the legal question of the regulations' validity, and it alone presents a genuine issue of material fact. Although counsel for the Services support their application of "consecutive" with the declaration of one of the Services' experienced data analysts (*see* ECF 44-1), the Court finds the declarant's familiarity with the Services' policies and the structure of their time reporting data helpful but insufficient to resolve this issue—especially when the actual time reports show corrections made by payroll reviewers.

may be able to prove entitlement to more § 5542(e) pay than he originally received under the Services' pay policies.

The Services show that the OPM regulations might have been less consequential to Mr. Horvath than the parties may have believed at the pleading stage, but the Services fail to demonstrate that Mr. Horvath will necessarily lack the evidence to prove entitlement to additional § 5542(e) pay at trial. Their assertion that Mr. Horvath received all the pay to which he is entitled under the Federal Circuit's interpretation of § 5542(e) misconceives the nature of Mr. Horvath's claim and misreads the Federal Circuit's decision.

For success on his claim for § 5542(e) backpay, Mr. Horvath does not need to prove affirmatively why the Services underpaid him, whether it was on account of the OPM regulations or a policy like 8-2-2. To prove the cause of action in his amended complaint, Mr. Horvath needs to prove that the Services paid him less money than he was entitled to under a correct interpretation of § 5542(e). The Federal Circuit's decision confirmed the condition under which § 5542(e) mandates payment. Mr. Horvath's identification of time schedules and time reports in the record showing days in which he met those conditions but was instructed to report two less hours of overtime than § 5542(e) entitles him to demonstrate a triable issue of fact material to Mr. Horvath's backpay claim.

Nothing in the Federal Circuit's decision limits Mr. Horvath's claim to the amount denied specifically by the Services' application of the invalidated OPM regulations. The Federal Circuit rejected a statutory interpretation argument that more broadly attacked the 8-2-2 policy, but neither that holding nor the Federal Circuit's rejection of the other two grounds in Mr. Horvath's original complaint should be read as an affirmative finding that application of the OPM regulations was the only way the Services could be liable to Mr. Horvath for additional § 5542(e) pay. *Cf. Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 951-53 (Fed. Cir. 1997) (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895)) (clarifying that the rule precluding lower courts from re-examining decisions implied by an appellate court's mandate applies "only to those issues decided by *necessary* implication"). At this stage of the proceeding and after some discovery, the Services are faced with evidence suggesting that Mr. Horvath may have been denied the § 5542(e) pay his complaint seeks for a different reason than Mr. Horvath alleged. The Services cannot set aside evidence of the denial of that pay as immaterial to Mr. Horvath's claim simply because the facts alleged in his amended complaint focus on the potentially less consequential OPM regulations. At this stage, Mr. Horvath's claim can fairly be read to encompasses any of the Services' pay policies that misapply § 5542(e).

### III.    CONCLUSION

The Court DENIES the defendant's motion for summary judgment and STAYS the plaintiff's motion for class certification. The parties have 60 days to review their respective records and identify and submit to the Court any other instances, during the years relevant to Mr.

Horvath's claim, for which the records indicate that he earned but did not receive § 5542(e) pay.[4] If the Services' broader review reflects that Mr. Horvath has received all the overtime pay due to him, the defendant may renew its motion for summary judgment. Until that review is complete, and the defendant determines whether to pursue a renewed motion for summary judgment, the Court will defer a decision on the plaintiff's motion. The parties will file a Joint Status Report by May 26, 2020.

It is so **ORDERED**.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

---

[4] The fact-specific nature of the inquiry related to Mr. Horvath's overtime pay strongly suggests that this case is not appropriate for resolution under RCFC 23. The Court does not, however, resolve that question at this time but, as noted, defers its resolution of the plaintiff's motion.